IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ETHANOL BOOSTING SYSTEMS, LLC and THE MASSACHUSETTS INSTITUTE OF TECHNOLOGY, | ) ) ) ) | |
| Plaintiffs, | ) ) | C.A. No. 20-706 (CFC) |
| v. | ) ) | |
| FORD MOTOR COMPANY, | ) ) | |
| Defendant. | ) | |

## FORD MOTOR COMPANY'S OPENING BRIEF
## IN SUPPORT OF ITS MOTION TO STAY

OF COUNSEL:

Michael S. Connor
ALSTON & BIRD LLP
Bank of America Plaza
101 South Tryon Street
Charlotte, NC  28280
(704) 444-1022

Natalie C. Clayton
Andrew J. Ligotti
ALSTON & BIRD LLP
90 Park Avenue, 15th Floor
New York, NY  10016
(212) 210-9573

Brian Hill
ALSTON & BIRD LLP
950 F Street NW
Washington, DC  20004
(202) 239-3733

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Rodger D. Smith II (#3778)
Michael J. Flynn (#5333)
Michelle Streifthau-Livizos (#6584)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
rsmith@mnat.com
mflynn@mnat.com
mstreifthau-livizos@mnat.com

*Attorneys for Defendant Ford Motor Company*

August 31, 2020

## **<u>TABLE OF CONTENTS</u>**

Page

TABLE OF AUTHORITIES ......................................................................... ii

GLOSSARY OF TERMS ............................................................................ iii

I.   INTRODUCTION .............................................................................1

II.  FACTUAL AND PROCEDURAL BACKGROUND ...................................2

    A.   The Prior Proceeding...............................................................2

    B.   The Newly Asserted Patents ................................................3

III. ARGUMENT...................................................................................4

    A.   A Stay will Simplify the Issues in this Case for Trial.........................5

        1.   This Case Accuses the Same Ford Products of Infringing Patents in the Same Family as the Previously Asserted Patents ........................................................................6

        2.   The Federal Circuit's Ruling in the Appeal Could Affect the Present Case ..........................................................8

    B.   This Case is at Its Very Outset, with No Trial Date Set ......................9

    C.   A Stay will not Unduly Prejudice or Present a Clear Tactical Disadvantage to Plaintiffs ....................................................10

        1.   Plaintiffs Chose to Withhold One of the Asserted Patents For a "Second Round" Against Ford ......................................10

        2.   Plaintiffs are Non-Practicing Entities that do not Compete with Ford ................................................................10

IV.  CONCLUSION...............................................................................11

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Acceleration Bay LLC v. Activision Blizzard, Inc.*,
C.A. No. 16-453-RGA, D.I. 711 (D. Del. Apr. 21, 2020) .................................... 5

*Advanced Micro Devices, Inc. v. Mediatek Inc.*,
C.A. No. 19-70-CFC, 2019 WL 4082836 (D. Del. Aug. 29, 2019) ................ 5, 9

*Ethanol Boosting Systems, LLC and The Massachusetts Institute of
Technology v. Ford Motor Company*,
Case No. 2020-1472 (Fed. Cir. 2020) .................................................. 1

*Ethicon, Inc. v. Quigg*,
849 F.2d 1422 (Fed. Cir. 1998) ............................................................. 4

*Honeywell Int'l Inc. v. Audiovox Commc'ns Corp.*,
2005 WL 2465898 (D. Del. May 18, 2005) ....................................................... 9

*Kaavo Inc. v. Cognizant Tech. Sols. Corp.*,
2015 WL 173476 (D. Del. Apr. 9, 2015) ............................................................. 5

*Landis v. N. Am. Co.*,
299 U.S. 238 (1936) ........................................................................................ 4

*Mission Abstract Data L.L.C. v. Beasley Broad. Grp., Inc.*,
C.A. No. 11-176-LPS, 2011 WL 5523315 (D. Del. Nov. 14, 2011) ................ 11

*Pragmatus Telecom, LLC v. Advanced Store Co.*,
2012 WL 2803695 (D. Del. July 10, 2012) ..................................................... 11

*Sebela Int'l Ltd. v. Prinston Pharmaceutical Inc.*,
Case No. 17-cv-04964-CCC-MF, D.I. 129 (D.N.J. Dec. 20, 2019) .................... 8

*Vehicle IP, LLC v. Wal-Mart Stores, Inc.*,
2010 WL 4823393 (D. Del. Nov. 22, 2010) .................................................... 10

STATUTES

35 U.S.C. § 112 ............................................................................................... 8

## **GLOSSARY OF TERMS**

| **Term** | **Definition** |
| --- | --- |
| '580 Patent | U.S. Patent No. 10,619,580 |
| '774 Application | U.S. Appl. No. 10/991,774 |
| '965 Patent | U.S. Patent No 9,708,965 |
| Current Action | Ethanol Boosting Systems, LLC and The Massachusetts Institute of Technology v. Ford Motor Company, C.A. No. 20-706-CFC (D. Del. May 27, 2020) |
| EBS | Ethanol Boosting Systems, LLC |
| First Action | Ethanol Boosting Systems, LLC and The Massachusetts Institute of Technology v. Ford Motor Company, C.A. No. 19-196-CFC (D. Del. Jan. 30, 2019) |
| Ford | Ford Motor Company |
| MIT | The Massachusetts Institute of Technology |
| Newly Asserted Patents | The '965 Patent and the '580 Patent |
| NHTSA | National Highway Traffic Safety Administration |
| Plaintiffs | EBS and MIT |
| Previously Asserted Patents | U.S. Patent Nos. 8,069,839; 9,255,519; 9,810,166; and10,138,826 |
| The Federal Circuit Appeal | Ethanol Boosting Systems, LLC v. Ford Motor Company, Case No. 2020-1472 (Fed. Cir. 2020) |

## I.     INTRODUCTION

A stay of this case pending issuance of a decision from the Federal Circuit concerning related patents asserted in the First Action (C.A. No. 19-196-CFC-SRF (D. Del.)) is likely to be most efficient for the Court and parties and may simplify issues in this case.  Ford, thus, respectfully requests that the Court stay the Current Action until a decision from the Federal Circuit is issued in the First Action.

On January 8, 2020, the Court held a claim construction hearing in the First Action, in which the Court adopted Ford Motor Company's ("Ford") proposed construction that the patents-in-suit in the First Action cover dual-fuel engines.  Soon afterward, the parties stipulated to non-infringement, and the Court entered final judgment in favor of Ford and against Ethanol Boosting Systems, LLC ("EBS") and The Massachusetts Institute of Technology ("MIT") (collectively, "Plaintiffs").  *See* C.A. No. 19-196, D.I. 144.  EBS and MIT then appealed to the Court of Appeals for the Federal Circuit from the final judgment in the First Action.  That Federal Circuit Appeal is pending and has been fully briefed.  *See Ethanol Boosting Systems, LLC v. Ford Motor Company*, Case No. 2020-1472, D.I. 23, 27, 28 (Fed. Cir. 2020). A decision is expected by this time next year, and likely sooner.

On May 27, 2020, Plaintiffs filed the Current Action against Ford, in which they allege that the very same Ford products at issue in the First Action infringe other patents in the same family as the patents in the First Action (and now

on appeal).  The allegations of willful infringement in the Complaint identify the same events and same pre-suit discussions between the parties that were alleged to be at issue in the First Action.  Moreover, the Complaint in the current case points to the same evidence, prominently featuring a 2018 National Highway Traffic Safety Administration ("NHTSA") report and Ford publications that were similarly featured in the First Action's complaint, as well as discovery and contentions in the prior case.  Because this case involves the same accused products, the same alleged evidence of infringement and virtually identical allegations of willful infringement as the First Action, and further because the patents in both cases are related, judicial economy counsels that this action be stayed.  If the Federal Circuit remands the First Action and the Current Action is not stayed, the parties may have to repeat depositions of the same witnesses and discovery on the same products, and have multiple jury trials in which the same products and witnesses are at issue and the prospect of inconsistent jury verdicts looms large.  Such duplicate proceedings would not be efficient for either the parties or the Court.  Ford thus respectfully requests that the Current Action be stayed.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    The Prior Proceeding

On January 30, 2019, Plaintiffs filed the First Action alleging infringement of four patents within the same patent family (herein referred to as the

"Previously Asserted Patents."). *See* C.A. No. 19-196, D.I. 1. Each of the Previously Asserted Patents claimed priority back to a patent application filed in 2004, U.S. Appl. No. 10/991,774 (the "'774 Application).

In the First Action, Plaintiffs alleged that certain Ford products, including its 2.7L and 3.5L EcoBoost Engines, among others, infringed the Previously Asserted Patents. During the *Markman* Hearing in the First Action, on January 8, 2020, the Court, *inter alia*, adopted Ford's construction of the "fuel that is directly injected" set of terms. *See* C.A. No. 19-196, D.I. 140. Shortly thereafter, the Court entered final judgment in favor of Ford against Plaintiffs on all asserted claims. *See id.*, D.I. 144.

## B.    The Newly Asserted Patents

The Current Action concerns two patents in the same family as the Previously Asserted Patents. Both of these patents—U.S. Patent No 9,708,965 (the "'965 Patent") and U.S. Patent No. 10,619,580 (the "'580 Patent") (collectively, the "Newly Asserted Patents")—claim priority from the same '774 Application as the Previously Asserted Patents.

The '965 Patent was issued on July 18, 2017, well before Plaintiffs filed the First Action. Plaintiffs nonetheless allege now that the same Ford products accused of infringement in the First Action infringe this patent. Plaintiffs could have asserted the '965 Patent in the First Action, but chose not to include it.

3

The '580 Patent was issued recently, on April 14, 2020.  But for the applicants' delay in prosecuting the claims they sought, the '580 Patent, like the other patents with which it shares a priority claim, could have been issued long ago. The fact that the '580 Patent was issued recently due to applicants' delay, rather than long ago like its siblings, provides no reason to unfairly burden Ford with potentially redundant proceedings.

## III.   ARGUMENT

The Current Action should be stayed during the pendency of the Federal Circuit Appeal.[1]  The decision to grant a stay of litigation is a matter left to the Court's discretion.  *See Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426-27 (Fed. Cir. 1998).  Indeed, "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants."  *Landis v. N. Am. Co.*, 299 U.S. 238, 254 (1936).

In exercising this discretion, courts typically consider three factors: "(1) whether granting the stay will simplify the issues for trial; (2) the status of the litigation, particularly whether discovery is complete and a trial date has been set;

---

[1]    In moving for a stay, Ford anticipates that its counterclaims would also be stayed.  This too is for efficiency given the similarity of the issues raised by Ford's counterclaims in this action and Ford's counterclaims in the First Action, such as estoppel and inequitable conduct, as a result of the asserted patents all stemming from the same patent family and the shared history between the parties.

and (3) whether a stay would cause the non-movant to suffer undue prejudice from any delay, or allow the movant to gain a clear tactical advantage." *Kaavo Inc. v. Cognizant Tech. Sols. Corp.*, 2015 WL 173476, at *1 (D. Del. Apr. 9, 2015) (citations omitted); *see also Advanced Micro Devices, Inc. v. Mediatek Inc.*, C.A. No. 19-70-CFC, 2019 WL 4082836, at *2 (D. Del. Aug. 29, 2019).

All three of the factors strongly weigh in favor of granting a stay in this case, as discussed further below.

### A.   A Stay will Simplify the Issues in this Case for Trial

The Current Action and the First Action involve the same accused products, the same relevant documents, and the same witnesses, as well as related patents.  A stay of this case while the Federal Circuit Appeal is resolved will simplify the issues for trial as it will prevent the Court from having to conduct two separate trials that would involve the same products, witnesses, and issues.  *See Acceleration Bay LLC v. Activision Blizzard, Inc.*, C.A. No. 16-453-RGA, D.I. 711 (D. Del. Apr. 21, 2020) (staying plaintiff's patent infringement action *sua sponte* pending resolution of an appeal in a related case where "[t]he related case has many similar issues, and the resolution of that appeal will likely simplify the remaining issues in this case") (docket report showing oral order attached hereto as Exhibit 1).

5

1. **This Case Accuses the Same Ford Products of Infringing Patents in the Same Family as the Previously Asserted Patents**

Plaintiffs' claims in the First Action and the Current Action concern the same Ford products, witnesses and documents.  Many of Ford's defenses and counterclaims are similar, too.  Thus, the same witnesses and documents will be involved in the First Action and Current Action.

For example, in the Current Action, as with the First Action, Plaintiffs rely on a July 2018 report issued by NHTSA concerning several of Ford's engines. *See* D.I. 1, at ¶ 93.  This report served as the foundation for Plaintiffs' claims in the Complaint of the First Action relating to the Previously Asserted Patents.  *See, e.g.*, C.A. No. 19-196, D.I. 1, at ¶¶ 68, 69, 80-82, 91-93, 102-05.  As seen in the comparison chart attached as Appendix A, for instance, the cited charts and statements from the report largely remain identical.  *Compare id.* at ¶¶ 93-96, 106-07 *with* C.A. No. 19-196, D.I. 1, at ¶¶ 68, 69, 80-82, 91-93, 102-05.

The Complaint in the Current Action also references the same Ford press releases, website clippings, and brochures.  *Compare* D.I. 1, at ¶¶ 48-53, 55-63, 92 *with* C.A. No. 19-196, D.I. 1, at ¶¶ 45-50, 52-60, 67.  Plaintiffs likewise point, in identical language in the new Complaint and prior Complaint, to the same negotiations between Ford and EBS as allegedly supporting their claims of willful infringement.  *Compare, e.g.*, D.I. 1, at ¶¶ 22-47 *with* C.A. No. 19-196, D.I. 1, at

¶¶ 22-44.  As can be seen in the comparison table attached as Appendix B, once again, the language in these non-exhaustive examples of paragraphs alleging these meetings and events is nearly identical.

As a result of Plaintiffs' repeated allegations, Ford's Answer and Counterclaims again raise the same defenses as in the First Action.  D.I. 9, at ¶¶ 44-49; *cf.* C.A. No. 19-196, D.I. 8, at ¶¶ 30-37.  Thus, Ford's defenses of estoppel, inequitable conduct, no willful infringement, and license and exhaustion, as well as its counterclaims for declaratory judgment of estoppel and unenforceability, will also involve the same witnesses and documents that would be presented in the First Action.  *See* D.I. 9, at pp. 19-20, 33, 35-38, 39-42.  In particular, the Newly Asserted Patents are unenforceable due to the same actions by the named inventors and/or their patent attorneys as with the Previously Asserted Patents.  *See, e.g.*, D.I. 9, at ¶¶ 139-56; *cf.* C.A. No. 19-196, D.I. 8, at ¶¶ 120-45.  The prosecuting attorney, Sam Pasternack of MIT's Technology Licensing Office, would thus have to be deposed in both actions about the same misconduct and omissions.

Because the Newly Asserted Patents stem from the same patent family as the Previously Asserted Patents, from Plaintiffs' side, the same inventors, prosecuting attorneys, and licenses are involved.  The patents, moreover, share common claim terms and have overlapping figures and written descriptions.  By virtue of their shared claims of priority (which Ford again contests), the Newly

Asserted Patents give rise to the same disputes regarding conception and reduction to practice, as well as similar invalidity issues related to enablement and written description under 35 U.S.C. § 112.

The upshot is that the discovery sought by both sides in this case will overlap nearly entirely with discovery from the First Action should the First Action resume following a remand by the Federal Circuit.  No depositions of Plaintiffs' witnesses had yet occurred in the First Action and only four depositions of Ford witnesses had been taken.  Permitting this case to proceed now presents a high likelihood that Ford, EBS, and MIT individuals will all have to be deposed twice on the exact same subject matter.

Given the numerous shared issues, "[t]o push forward with this case while the other case is appealed would seem inefficient, duplicative, and wasteful." *Sebela Int'l Ltd. v. Prinston Pharmaceutical Inc.*, Case No. 17-cv-04964-CCC-MF, D.I. 129, at *4 (D.N.J. Dec. 20, 2019) (staying case pending resolution of a Federal Circuit appeal of related case where there was overlap between the two cases' parent patent) (attached hereto as Exhibit 2).

### 2. The Federal Circuit's Ruling in the Appeal Could Affect the Present Case

Apart from the high probability of overlapping and duplicative discovery, the Federal Circuit's decision on appeal may bear on the merits of this case.  As noted above, the patents in the Current Action share inventors, have

overlapping written descriptions, and similar or identical claim terms—including the very claim terms at issue on appeal. The shared claim of priority, furthermore, means that the Federal Circuit's evaluation of the shared prosecution history will apply to the Newly Asserted Patents as well.

Given that the same Ford products are at issue, there is a likelihood that the Federal Circuit's decision as to the "fuel that is directly injected" terms could impact Plaintiffs' claims in the present case. Proceeding ahead before the Federal Circuit issues its ruling will likely result in all parties (and the Court) wasting their time and effort while increasing the likelihood of duplicative discovery. The first factor thus weighs in favor of granting a stay pending the appeal.

## B. This Case is at Its Very Outset, with No Trial Date Set

This case is in its infancy. No scheduling order is in place, and no trial date has been set. *See Advanced Micro Devices*, 2019 WL 4082836, at *3 (finding second factor favored a stay where discovery had not begun, a trial date had not been set, and no scheduling order was in place).

Plaintiffs filed this second action against Ford three months ago. The pleadings closed on August 10, 2020, when Plaintiffs filed their Answer to Ford's Answer and Counterclaims. *See* D.I. 10. No discovery has yet occurred. *See Honeywell Int'l Inc. v. Audiovox Commc'ns Corp.*, 2005 WL 2465898, at *4 (D. Del. May 18, 2005) (granting stay that "comes at time when discovery has not even begun

9

and no trial date has been set").  As such, the early nature of this case weighs in favor of granting a stay.

## C.    A Stay will not Unduly Prejudice or Present a Clear Tactical Disadvantage to Plaintiffs

A stay of this "second round" litigation will not cause undue prejudice to Plaintiffs, nor would it cause them a clear tactical disadvantage.  To the contrary, a stay would mitigate prejudice to Ford caused by Plaintiffs' piecemeal litigation strategy.

### 1.    Plaintiffs Chose to Withhold One of the Asserted Patents For a "Second Round" Against Ford

A stay would remedy the disadvantage to Ford caused by Plaintiffs' piecemeal litigation strategy.  Plaintiffs are now asserting a patent, which, as noted above, issued in 2017 and could have been asserted in the First Action; moreover, the '580 Patent could have issued years ago but for the applicants' delay in prosecution.  Thus, to the extent Plaintiffs complain of delay, that delay is of their own making.  Ford should not be unfairly prejudiced by Plaintiffs' disjointed patent prosecution and litigation strategy.

### 2.    Plaintiffs are Non-Practicing Entities that do not Compete with Ford

Any alleged harm that Plaintiffs may purport to suffer from any delay in the litigation is mitigated by the fact that neither EBS nor MIT practice the patents or compete with Ford in any way.  *See Vehicle IP, LLC v. Wal-Mart Stores, Inc.*,

2010 WL 4823393, at *2 (D. Del. Nov. 22, 2010) ("Of particular importance is the fact that plaintiff does not develop or sell any products of its own and is not a competitor of defendants. . . .  Since the parties do not compete, this factor favors a stay."); *see also Mission Abstract Data L.L.C. v. Beasley Broad. Grp., Inc.*, C.A. No. 11-176-LPS, 2011 WL 5523315, at *4 (D. Del. Nov. 14, 2011) ("Because Mission Abstract is a non-practicing entity, this factor favors a stay.").

As such, the alleged harm is purely monetary, and Plaintiffs would not be unduly prejudiced by a stay of the proceedings.  *See Uniloc 2017 LLC v. Vudu, Inc.*, C.A. No. 19-183-CFC, D.I. 72, at *2 (D. Del. Mar. 26, 2020) (finding no undue prejudice in granting stay, in part because plaintiff was non-practicing entity that did not compete with defendant) (attached hereto as Exhibit 3); *see also Pragmatus Telecom, LLC v. Advanced Store Co.*, 2012 WL 2803695, at *2 (D. Del. July 10, 2012) (To the extent "[a]ny purported harm that [Plaintiffs] suffer[] from a stay can be fully compensated by monetary damages," that favors a stay under the third factor).  Indeed, Plaintiffs' own behavior suggests there is no undue prejudice in a stay, given Plaintiffs' delay in bringing this case in the first instance.

## IV.   CONCLUSION

For the foregoing reasons, Ford respectfully requests that the Court grant its motion to stay this case pending resolution of the Federal Circuit Appeal.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Rodger D. Smith II*

Rodger D. Smith II (#3778)
Michael J. Flynn (#5333)
Michelle Streifthau-Livizos (#6584)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
rsmith@mnat.com
mflynn@mnat.com
mstreifthau-livizos@mnat.com

*Attorneys for Defendant Ford Motor Company*

OF COUNSEL:

Michael S. Connor
ALSTON & BIRD LLP
Bank of America Plaza
101 South Tryon Street
Charlotte, NC  28280
(704) 444-1022

Natalie C. Clayton
Andrew J. Ligotti
ALSTON & BIRD LLP
90 Park Avenue, 15th Floor
New York, NY  10016
(212) 210-9573

Brian Hill
ALSTON & BIRD LLP
950 F Street NW
Washington, DC  20004
(202) 239-3733

August 31, 2020

## <u>CERTIFICATION OF WORD COUNT</u>

Pursuant to the Court's Standard Order Regarding Briefing in All Cases, I hereby certify that the foregoing contains 2,665 words, and therefore complies with the maximum number of words for a 20-page submission in accordance with D. Del. LR 7.1.3(a)(4).

*/s/ Rodger D. Smith II*

Rodger D. Smith II (#3778)

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 31, 2020, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on August 31, 2020, upon the following in the manner indicated:

Brian E. Farnan, Esquire                    *VIA ELECTRONIC MAIL*
Michael J. Farnan, Esquire
FARNAN LLP
919 North Market Street, 12th Floor
Wilmington, DE  19801
*Attorneys for Plaintiffs*

Matthew R. Berry, Esquire                   *VIA ELECTRONIC MAIL*
Andres C. Healy, Esquire
Steven M. Seigel, Esquire
SUSMAN GODFREY LLP
1201 Third Avenue, Suite 3800
Seattle, WA  98101
*Attorneys for Plaintiffs*

William D. O'Connell, Esquire               *VIA ELECTRONIC MAIL*
SUSMAN GODFREY LLP
1301 Ave. of the Americas, 32nd Fl.
New York, NY  10019-6023
*Attorneys for Plaintiffs*


*/s/ Rodger D. Smith II*
_____
Rodger D. Smith II (#3778)

## APPENDIX A

| Original Complaint | Present Complaint |
|---|---|
| 68.    Further, as demonstrated by the below figure from a July 2018 report issued by the National Highway Traffic Safety Administration, Ford's 3.5L EcoBoost engine, including its fuel management system, utilizes such port and direct fuel injection such that, above a selected value of torque (e.g., above approximately 40% absolute engine load), the proportion of fuel that is introduced via direct injection (as compared to port injection) increases:<br><br>*5.4.3.2.DI vs PFI*<br>The fuel can be fed to the engine through the PFI system or the DI system. Figure 29 shows the map of the PFI and DI strategy. The PFI system provides the fuel to the engine when the absolute engine load is below 40 percent. The DI system is quickly blended in above 40 percent absolute engine load. Between 60 percent to 140 percent absolute load, 80 percent to 70 percent of the fuel is delivered through the DI system. At absolute engine loads above 140 percent the PFI system provides an increase proportion of the fuel up to 40 percent. At the maximum absolute load above 2,000 rpm 60 percent of the fuel is provided by the DI system and 40 percent by the PFI system that corresponds to the values shown in the maximum acceleration test in Figure 24.<br><br><br>*Figure 29: DI and PFI usage map as a function of the engine speed and load*<br><br>The island of 100 percent DI operation at 575 rpm and 40 percent absolute load corresponds to the engine starting on the DI system before switching to the PFI system as described in the previous section.<br><br>C.A. No. 19-196, D.I. 1, ¶ 68 | 94.    Further, as also demonstrated by the above figures as well as the below figure from the July 2018 National Highway Traffic Safety Administration report, Ford's 3.5L EcoBoost engine, including its fuel management system, utilizes such port and direct fuel injection such that the fraction of fuel in the cylinder that is introduced by the first fueling system increases with increasing manifold pressure so as to prevent knock by providing increased knock resistance.<br><br>*5.4.3.2.DI vs PFI*<br>The fuel can be fed to the engine through the PFI system or the DI system. Figure 29 shows the map of the PFI and DI strategy. The PFI system provides the fuel to the engine when the absolute engine load is below 40 percent. The DI system is quickly blended in above 40 percent absolute engine load. Between 60 percent to 140 percent absolute load, 80 percent to 70 percent of the fuel is delivered through the DI system. At absolute engine loads above 140 percent the PFI system provides an increase proportion of the fuel up to 40 percent. At the maximum absolute load above 2,000 rpm 60 percent of the fuel is provided by the DI system and 40 percent by the PFI system that corresponds to the values shown in the maximum acceleration test in Figure 24.<br><br><br>*Figure 29: DI and PFI usage map as a function of the engine speed and load*<br><br>The island of 100 percent DI operation at 575 rpm and 40 percent absolute load corresponds to the engine starting on the DI system before switching to the PFI system as described in the previous section.<br><br>D.I. 1, ¶ 94 |

I

## APPENDIX B

| Original Complaint | Present Complaint |
|---|---|
| 22.     For example, on October 30, 2014, Professor Heywood emailed Dr. Ken Washington (Ford's Vice President of Research and Advanced Engineering) and Mr. Bill Coughlin (Ford's Global Technologies CEO and chief intellectual-property officer) on behalf of EBS—attaching a document titled "Optimized Port + Direct Injection for Cleaner and More Efficient Gasoline Engines." C.A. No. 19-196, D.I. 1, ¶ 22 | 22.     For example, on October 30, 2014, Professor Heywood emailed Dr. Ken Washington (Ford's Vice President of Research and Advanced Engineering) and Mr. Bill Coughlin (Ford's Global Technologies CEO and chief intellectual-property officer) on behalf of EBS—attaching a document titled "Optimized Port + Direct Injection for Cleaner and More Efficient Gasoline Engines." D.I. 1, ¶ 22 |
| 26.     The next day, Dr. Washington responded on behalf of Ford—stating: "Thank you for your note with the offer for Ford to be the first to discuss a possible license for this intellectual property portfolio. I suspect that these technologies have a complex business case. I will consult with our technical, legal and business teams and get back with you." C.A. No. 19-196, D.I. 1, ¶ 26 | 26.     The next day, Dr. Washington responded on behalf of Ford—stating: "Thank you for your note with the offer for Ford to be the first to discuss a possible license for this intellectual property portfolio. I suspect that these technologies have a complex business case. I will consult with our technical, legal and business teams and get back with you." D.I. 1, ¶ 26 |
| 32.     Two days later on February 15, 2015, Ford's chief intellectual property officer, Bill Coughlin, responded. Mr. Coughlin told EBS that he was "cause of the delay" and that "[u]nless advised otherwise by Ken, Ford will meet with you." Mr. Coughlin also added that Ford "should be in a position to advise when we can meet soon." EBS responded—telling Ford: "Thanks for your reply. We would like to set up a meeting date as soon as possible. Would a time in the March 17 to 27th period be feasible?" C.A. No. 19-196, D.I. 1, ¶ 32 | 34.     Two days later, on February 15, 2015, Ford's chief intellectual property officer, Bill Coughlin, responded. Mr. Coughlin told EBS that he was "cause of the delay" and that "[u]nless advised otherwise by Ken, Ford will meet with you." Mr. Coughlin also added that Ford "should be in a position to advise when we can meet soon." EBS responded—telling Ford: "Thanks for your reply. We would like to set up a meeting date as soon as possible. Would a time in the March 17 to 27th period be feasible?" D.I. 1, ¶ 34 |
| 36.     The April 17, 2015 meeting concluded with Dr. Cohn stating that it would be good if Ford and MIT/EBS could find a resolution that was a win-win for all parties involved. C.A. No. 19-196, D.I. 1, ¶ 36 | 38.     The April 17, 2015 meeting concluded with Dr. Cohn stating that it would be good if Ford and MIT/EBS could find a resolution that was a win-win for all parties involved. D.I. 1, ¶¶ 38 |

## APPENDIX B

| Original Complaint | Present Complaint |
|---|---|
| 40.     Mr. Greg Brown, who at the time was Global Engine Intellectual Property Counsel at Ford Global Technologies, LLC, replied the following week—writing in an August 3, 2015 email that "Bill Coughlin has asked [him] to step in for him on this matter" and that he stood "ready to discuss" Ford's pitch to help EBS license other MIT/EBS technology to third parties in exchange for a "covenant not to sue" on the MIT/EBS dual injection technology at issue in this matter.<br>C.A. No. 19-196, D.I. 1, ¶ 40 | 43.     Mr. Greg Brown, who at the time was Global Engine Intellectual Property Counsel at Ford Global Technologies, LLC, replied the following week—writing in an August 3, 2015 email that "Bill Coughlin has asked [him] to step in for him on this matter" and that he stood "ready to discuss" Ford's pitch to help EBS license other MIT/EBS technology to third parties in exchange for a "covenant not to sue" on the MIT/EBS dual injection technology at issue in this matter.<br>D.I. 1, ¶¶ 43 |
| 43.     EBS's final licensing conversation with Ford occurred in November 2015. Mr. Brown told EBS that Ford was not interested in licensing the offered technology and patents. In response to a question about whether Ford might be interested in the MIT/EBS dual injection technology for future vehicles, Mr. Brown indicated that Ford had no plans that he knew of to use that technology in its vehicles. Mr. Brown also declined EBS's request to involve Ford engineers in their discussions.<br>C.A. No. 19-196, D.I. 1, ¶ 43 | 46.     EBS's final licensing conversation with Ford occurred in November 2015. Mr. Brown told EBS that Ford was not interested in licensing the offered technology and patents. In response to a question about whether Ford might be interested in the MIT/EBS dual injection technology for future vehicles, Mr. Brown indicated that Ford had no plans that he knew of to use that technology in its vehicles. Mr. Brown also declined EBS's request to involve Ford engineers in their discussions.<br>D.I. 1, ¶ 46 |